E-FILED
Thursday, 04 December, 2025  09:43:46 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **LYARRON EMERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 20-CV-3315** |
| | ) | |
| **KRISTY WUEST, Warden,** | ) | |
| **Southwestern Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>ORDER</u>

Presently before the court is a Petition for Writ of Habeas Corpus by a Person in State Custody (#1), filed pursuant to 28 U.S.C. § 2254 by Petitioner Lyarron Emers on November 23, 2020. Therein, Petitioner seeks federal habeas relief from his conviction for unlawful possession with intent to deliver a controlled substance entered in the Circuit Court of Champaign County, Illinois. Respondent filed a Response (#25) on August 16, 2023. For the reasons set forth below, the Petition (#1) is DENIED.

### BACKGROUND

The following background facts are taken from the portions of the state court record that have been provided to this court, including the opinions of the Illinois Appellate Court in Petitioner's direct and postconviction appeals. See *People v. Emers*, 2019 WL 3413592 (Ill. App. Ct. July 29, 2019); *People v. Emers*, 2020 WL 5535289 (Ill. App. Ct. Sept. 14, 2020); *People v. Emers*, 2022 WL 2345823 (Ill. App. Ct. June 28, 2022). The

factual determinations of the state courts are presumed to be correct unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Arrest and Charges**

In March, April, and June 2016, the State charged Petitioner by information with manufacture or delivery of a controlled substance (720 Ill. Comp. Stat. 570/401(a)(2)(A)) (count I); unlawful possession of a weapon by a felon on mandatory supervised release ("MSR") (720 Ill. Comp. Stat. 5/24-1.1(a)) (count II); unlawful possession of a controlled substance (720 Ill. Comp. Stat. 570/402(a)(2)(A)) (count III); and unlawful possession with intent to deliver a controlled substance (720 Ill. Comp. Stat. 570/401(c)(2)) (count IV). In September 2016, the trial court ordered counts I, III, and IV severed from count II for trial, and the State withdrew counts I and III.

**Jury Trial and Conviction**

At Petitioner's February 2017 jury trial, Detective Robert Sumption with the Champaign Police Department testified he placed Petitioner under arrest as Petitioner walked in the back door of the Common Ground Food Co-op. Sumption escorted Petitioner to the parking lot, where he searched his outer clothing and discovered multiple individual bags, which appeared to contain cannabis and a "white rocklike substance," packaged inside a larger plastic bag between Petitioner's buttocks. The items were then turned over to Champaign police officer James Kerner.

Sumption also recovered a key ring containing a house key, "a key fob for a vehicle, as well as ignition keys and door keys for a vehicle" from Petitioner's pants pocket. Sumption testified the house key was used to gain access to the residence at 905

Prestwick Point in Champaign, Illinois, during the execution of a search warrant. On cross-examination, Sumption explained the vehicle keys he recovered from Petitioner's pants pocket belonged to "a blue SUV" and stated he prepared a towing report for the vehicle. The towing report indicated the vehicle was a blue 1994 Chevrolet Blazer and listed Abdullah Aziz as its registered owner.

Kerner testified as an expert in the field of packaging, delivery, and use of cocaine. Kerner identified People's exhibit No. 1 as "the seventeen bags of cocaine that were individually packaged, that were located by Detective Sumption . . . in [Petitioner's] buttocks area." Based on his experience, Kerner stated the seventeen bags were "about $1,700.00 worth of cocaine" and "packaged for sale and delivery, not for personal consumption."

Kerner also testified that he participated in the execution of the search warrant at 905 Prestwick Point and stated he was "tasked with collecting all items of evidentiary value that were found inside the residence." Kerner testified he recovered (1) a two-ounce bottle of inositol powder, which is a white, powder-based, dietary supplement "routinely utilized by cocaine dealers to cut or mix with their cocaine product"; (2) two digital scales which field-tested positive for the presence of cocaine; and (3) an open box of sandwich bags from the top right kitchen cabinet next to the refrigerator.

Kerner further testified he recovered (1) an empty bottle of inositol powder, (2) another digital scale which field-tested positive for the presence of cocaine, (3) a ziplock bag containing "numerous other smaller ziplock baggies," (4) another open box of

sandwich bags, and (5) a prescription pamphlet for Petitioner from the top left bathroom drawer. Kerner also recovered an earnings statement for Petitioner from the Common Grounds Food Co-op from the top left kitchen drawer.

Investigator Seth Herrig of the Champaign County Sheriff's Office testified he assisted in executing the search warrant at 905 Prestwick Point and stated his responsibilities were to photograph the premises and the items found therein. People's exhibit No. A-15 was a photograph depicting "an earning statement from the Common Ground Food Co-op with [Petitioner's] name on it." People's exhibit No. A-18 was a photograph depicting another "piece of mail with [Petitioner's] name on it … located in 905 Prestwick Point." On cross-examination, Herrig testified Petitioner's earnings statement was addressed to 3605 Christopher Circle in Urbana, Illinois, and the other piece of mail for Petitioner was addressed to 1305 Christopher Circle in Urbana, Illinois.

Defense counsel called Tawanna Williams, Petitioner's younger sister. Williams testified she and Petitioner lived together at 1901 Joanne Lane in Champaign, Illinois, at the time of his arrest. Williams stated Petitioner helped her with the rent and "put the water in his name." Petitioner had a problem with drugs, which Williams stated was a reason she decided to move out.

Defense counsel next called Trisha Fitton, Petitioner's former paramour with whom Petitioner shared one child. Fitton testified she had a three-month relationship with Petitioner, which ended in 2014 due to Petitioner's drug problem and infidelity. Fitton stated: "We had had a relationship, tried to make the relationship work, kind of around the time of the baby, and that was not able to be done. So, we have maintained

4

contact with each other. We have been intimate, but we cannot make a relationship work." Fitton testified she moved to 905 Prestwick Point in August 2015 and remained there until April 2016.

In September 2015, Aziz moved into the residence with Fitton. Fitton testified Aziz was Petitioner's uncle and she "was helping him out." Fitton was given two "master keys" as part of her lease, and each key "said 905P on it." Fitton then identified People's exhibit No. A-8 as a photograph depicting "the lock on the front door with the key, 905P. That is Abdullah Aziz's key. I can tell by the key chain." Fitton also stated Aziz owned "a blue Chevy Blazer, . . . older style truck."

Fitton testified the inositol powder belonged to her, and she used the digital scales and sandwich bags for her own personal use. Fitton also identified several items of clothing, recovered by police, which she stated belonged to Aziz. On cross-examination, Fitton admitted Petitioner visited her at 905 Prestwick Point "once or twice every couple weeks." Fitton also stated Petitioner and Aziz both worked at the Common Ground Food Co-op and sometimes carpooled together.

At the conclusion of the trial, the jury found Petitioner guilty of count IV, unlawful possession with intent to deliver a controlled substance.

**Presentence Report and Sentencing**

On March 13, 2017, defense counsel filed a motion for a new trial. The court set the sentencing hearing for April 5, 2017, and directed Court Services to prepare a presentence report.

On March 30, 2017, a presentence report was filed. In a section titled "Additional
Information," the report indicated the following:

> The Court should note this officer appeared at the Champaign County
> Satellite Jail on 3/30/17 in an effort to interview [Petitioner] for the
> preparation of this report. Once there, jail staff in visitation informed this
> officer the [Petitioner] did not want to be interviewed. This officer
> requested staff explain to [Petitioner] who was there to see him and that
> information was needed to prepare a court-ordered report. The visitation
> jail staff spoke to Corrections Officers via telephone, who were relaying
> information to [Petitioner]. [Petitioner] was told a probation officer was
> present to interview him for preparation of a presentence report. The
> [Petitioner] advised the Corrections Officer he would not see anyone or be
> interviewed. Therefore, at [Petitioner's] insistence, he was not interviewed
> for the preparation of this report. All information included below was
> obtained from probation records, the Pre-sentence report filed in
> Champaign Co. case 01-CF-630, and the Social Investigation Report filed
> in Vermilion Co. cases 98-JD-31 and 98-JD-202.

On April 4, 2017, Petitioner filed written objections to the presentence report.
Petitioner objected on the grounds that the report: (1) contained an incorrect calculation
of his presentence incarceration credit; (2) referenced unverified Vermilion County
probation records; (3) contained inaccurate information regarding a conviction for
unlawful consumption of alcohol; (4) improperly referenced non-misdemeanor traffic
offenses; (5) improperly referenced an ordinance violation; (6) contained inadmissible
hearsay regarding what jail staff told the probation officer when [Petitioner] refused to
be interviewed for the report; (7) used "stale" information regarding Petitioner's alleged
gang affiliation; (8) improperly used the word "victim"; and (9) included an
unauthorized "Analysis" section that "usurp[ed] the Court's proper function."

On April 5, 2017, the trial court commenced Petitioner's sentencing hearing and addressed Petitioner's pending post-trial motions. At the outset of the proceedings, defense counsel stated:

> Your Honor, I've been handed some handwritten affidavits by the [Petitioner]. They're affidavits that someone prepared. I guess the [Petitioner] prepared. And he is asking that these affidavits from Trisha Fitton, one is an affidavit from Abdullah Aziz, which—Judge, he wants these to be added to the record—or, he wants these to be considered as far as the motion for new trial.

The court denied Petitioner's request to admit the affidavits, stating: "These are not relevant to any of the issues that would support the granting of a new trial. . . . It all appears to be cumulative, and there's absolutely no reason to admit these." The court agreed, however, to supplement the record by placing the affidavits on file "to document what was tendered to the Court."

The trial court then addressed in detail each of Petitioner's nine objections to the presentence report. Specifically, concerning Petitioner's assertion to "a right against self-incrimination," the court stated:

> It's a presentence hearing. The officer was acting as an agent of the court in obtaining that information. While the [Petitioner] has the right to refuse, he does so with no guarantee that the Court won't consider that. And, in fact, he does so at his own peril because for the precise reasons here then the information has to be gleaned as best as the officer can using all of her abilities and resources to a reasonable degree, so the fact that he chose not to cooperate is something the court can consider. None of these questions implicated his Fifth Amendment rights or his right to continue to attack the conviction and preserve his appellate rights, and he simply chose not to cooperate with an officer who was fulfilling her court obligation to interview the [Petitioner]. So I am going to consider that for those purposes. It certainly goes to his attitude and his rehabilitative potential.

The State then presented evidence in aggravation. Detective Jim Bednarz of the Champaign Police Department testified regarding his involvement in an investigation that led to charges against Petitioner in Champaign County Case No. 16-CF-389. The charges involved an incident on March 9, 2016, in which Petitioner allegedly attacked a woman named Tamara Stanberry.

Bednarz testified he spoke with Stanberry following the incident. Stanberry claimed she met Petitioner at a bar and later left with him in his car. They eventually stopped at a friend's residence, where Petitioner became angry with Stanberry after she refused to have sex with him, and he discovered some of his money and a cell phone were missing. They went outside to the car to look for the missing phone, and Stanberry refused once again to have sex with Petitioner. At this point, Petitioner allegedly "began to beat her on the head and face with closed fists, both left hand and right hand." After Stanberry exited the vehicle and reentered the house, Petitioner followed her and continued to beat her while she was curled up in a ball on the couch. Petitioner then removed his belt and struck Stanberry approximately 20 times with it. Stanberry's claims were later corroborated by another witness who was at the residence. The State charged Petitioner with aggravated battery, home invasion, and intimidation of a witness, but the charges were later dismissed.

Petitioner did not present any evidence in mitigation. Based on his prior convictions, Petitioner was subject to Class X sentencing (730 Ill. Comp. Stat. 5/5-4.5-95(b) (West 2014)). In determining Petitioner's sentence, the court stated it considered the presentence report; the evidence in aggravation and mitigation; Petitioner's

8

character, history, and rehabilitative potential; and the arguments of counsel. The court

noted the following:

> Much of the information obtained in the presentence report was gleamed [sic] from public records and previous reports and interviews because [Petitioner] has refused to cooperate with the presentence procedure and be interviewed. And to that extent then, I'm relying on that information, and it has not supplemented by [sic] any additional information offered by [Petitioner] today.
>
> [Petitioner] is 35 years of age. He has a prior record that consists of 4 felony convictions, 6 prior misdemeanors and 16 petty traffic offenses. He has received virtually every permutation of sentencing options available in the criminal justice system from fine only to county jail time. He successfully completed court supervision for unlawful possession of alcohol as a minor. He has received conditional discharge, probation, intensive probation as a juvenile and has had four terms of incarceration to the Department of Corrections.
>
> . . . I would note as evidence in aggravation I heard testimony of Officer Bednarz with regards to the investigation with Ms. Stanberry. It's apparent that her statement is corroborated by the physical observations that Officer Bednarz made as well as the fact that there were photographs that document the injuries consistent with what she described. When the detective took her statement I would note that she was willing to be audio and video recorded. Also note it was corroborated by two independent witnesses, one who was in the residence and one who was actually residing in the residence.
>
> It is also uncontradicted that the [Petitioner] chased her back into the residence. So regardless of whether the argument was precipitated over property or perceived theft or someone biting the [Petitioner], none of that would justify or suggest any sufficient provocation to rise to the level of self-defense. This was a man who chased this woman into the residence in rage beating her with her [sic] fists as she fled, and as she curled up into a ball then beat her with a belt some 20 times, humiliating and degrading her in the most dehumanizing way. And that makes protection of the public a factor at this point. He has two prior aggravated battery convictions and a robbery conviction.
>
> . . . I would note that we can't determine if he has any current substance abuse issues because he did not cooperate with the Court Services

Department in describing those or illuminating them in any way. We know as a juvenile he—or, as a young adult he had two chances for treatment and evaluation, and that's all we know about that. We do know that he was caught in the place of work, again, where families go to shop and individuals go to shop with a bag that contained 16 individual packaged baggies that contained cocaine. It was 14.3 grams according to the testimony of the forensic scientist from the state lab, and that was uncontradicted. On the continuum that defines the amount for the offense it's on the high end. It almost—is almost to the maximum amount that would define that range of offense.

. . . Deterrence becomes a compelling factor then for individuals who view the sale of drugs as an option to gainful employment or a supplement to gainful employment and who . . . trade in places where people go to shop and buy food and conduct their life assuming that there is not going to have—they're not going to be exposed to this around them, and the Court has an obligation to make clear to others so inclined this is unacceptable.

The suggestion that [Petitioner] is a victim of cocaine doesn't ring true when he was one of the ones that was pushing it and supplying it to the community. I would note as well when looking at rehabilitative potential it is certainly troubling. The poor record of compliance we have with the most basic requirements of mandatory supervised release and probation, and he has not been successful. We see him over and over again committing new offenses and violating it. And to violate parole four separate times with much less stringent requirements than probation after coming out of the Department of Correction and realizing what's at stake is also deeply troubling. And the fact he was on parole for a drug offense when he committed this offense is also a factor in aggravation. The evidence in aggravation is significant in that it certainly creates a risk to the public for someone who's willing to do that to another individual regardless of what the provocation he perceived as, and it just enhances then the need for a significant sentence that would protect the public.

I've considered all the factors in aggravation and mitigation. Having regard to the nature and circumstances of the offense, the history, character and rehabilitative potential of the [Petitioner]. I've noted his lack of cooperation with this process. I do find that a community based sentence is, obviously, not an option here nor would it be appropriate if it were. Imprisonment is necessary for the protection of the public, and a significant sentence is called for for the reasons that I've identified.

The trial court then sentenced Petitioner to 18 years in prison.

**Direct Appeal**

On direct appeal, Petitioner claimed the trial court improperly considered his refusal to assist in the preparation of a presentence investigation report as a factor in aggravation at sentencing. The Illinois Appellate Court affirmed Petitioner's conviction and sentence. *Emers,* 2019 WL 3413592, at *7.

The appellate court found that the trial court's comment noting Petitioner's lack of cooperation "was not directed at [Petitioner's] right to remain silent," observing that the trial court's "remarks did not occur when it was making its sentencing determination but rather when ruling on [Petitioner's] objections to the presentence report." *Id.* The court further noted:

> Even if we were to consider the trial court's statements improper, the record shows the weight the court assigned to [Petitioner's] refusal to cooperate was so insignificant it did not lead to a greater sentence . . . . Specifically, the court noted [Petitioner] had four felony convictions and six misdemeanor convictions. The court also emphasized [Petitioner's] poor record of compliance with the terms of his MSR in the past and the fact this offense occurred while [Petitioner] was on MSR for a drug-related offense. The court noted the amount of cocaine found on [Petitioner's] person was at the higher end of the range defining the offense. Finally, the court explained [Petitioner's] violent behavior in the incident involving Ms. Stanberry—which occurred just weeks before the events in this case—justified a longer prison sentence for the protection of the public. The record clearly reveals the court relied on a number of serious aggravating factors in determining [Petitioner's] sentence rather than his lack of cooperation.

*Id.*

Petitioner filed a Petition for Leave to Appeal ("PLA"), which the Illinois Supreme Court denied in November 2019. *People v. Emers*, 135 N.E.3d 549 (Ill.

11

2019). Petitioner then petitioned for a writ of certiorari to the Supreme Court of

the United States, which was also denied. *Emers v. Illinois*, 140 S. Ct. 2653 (2020).

**Postconviction Proceedings**

On April 10, 2017, while his direct appeal was pending, Petitioner filed a pro

se postconviction petition alleging he received ineffective assistance of trial counsel.

In December 2017, Petitioner's postconviction petition advanced to the second

stage of postconviction proceedings as no action was taken on the petition within 90

days of its filing, and the trial court appointed counsel. See 725 Ill. Comp. Stat. 5/122-

2.1(a) (West 2016).

On April 16, 2018, Petitioner, through appointed counsel, filed an amended

postconviction petition alleging various claims of ineffective assistance of trial counsel.

Petitioner asserted trial counsel provided ineffective assistance when he failed to (1)

introduce water bills in Petitioner's name "for service to an address that was not 905

Prestwick Point and that were not mailed to 905 Prestwick Point," (2) call Aziz at trial

and "adduce testimony beneficial to [Petitioner's] theory of the case," and (3) file a

motion to reconsider the sentence "in order to preserve the multiple sentencing errors

he alleged occurred during the hearing, thus potentially forfeiting them for appellate

review."

Aziz's affidavit—filed April 5, 2017—was attached to Petitioner's amended

petition and stated:

> I owned the blue 1994 Chevy Blazer that was impounded by police on 3-
> 23-16. I drove my blue 1994 Chevy Blazer to Lincoln Square Mall on 3-23-
> 16. I owned the 905 Preswick [sic] house key and blue 1994 Chevy Blazer

> truck key that police took on 3-23-16. I lived at 905 Preswick since
> September 2015. [Petitioner] never lived at 905 Preswick Champaign IL.
> No Property at 905 Preswick besides 3 papers with [Petitioner's] name on
> it belonged to [Petitioner].

Postconviction counsel also attached copies of two water bills in Petitioner's name

concerning the final billing periods between February 3 and March 7, 2016, for service at

1305 Christopher Circle.

      On April 30, 2018, the State filed a motion to dismiss Petitioner's amended

postconviction petition, arguing that the amended petition failed to make a substantial

showing of a constitutional violation. The State argued that the claims contained in

Petitioner's amended petition (1) were forfeited as he failed to raise them on direct

appeal and (2) failed to demonstrate his trial counsel provided ineffective assistance.

      On August 16, 2018, the trial court entered a written order granting the State's

motion to dismiss Petitioner's amended postconviction petition. The court found that

each of the issues raised by Petitioner as a basis for postconviction relief was forfeited

because they "were known to the [Petitioner] at the time and could have been raised on

direct appeal." As for the merits of those claims, the court stated:

> Even if Aziz's testimony and the water bills were presented, the evidence
> is not of such a nature that there is a reasonable basis to find that the
> outcome of the trial would be changed. Much of the same evidence would
> be cumulative to the testimony of Trisha Fitton, the [Petitioner's]
> girlfriend. Further, the State did not have to prove that the [Petitioner]
> resided at the residence, only that he was in actual or constructive
> possession of evidence connected to that residence. The [Petitioner] was
> searched at his place of work and had the key to that residence on his
> person. An earnings statement and prescription for the [Petitioner] were
> found inside the residence, along with scales, inositol powder, baggies,
> [and] cocaine residue.

The Illinois Appellate Court affirmed the dismissal of Petitioner's amended postconviction petition, finding (1) Petitioner's claim that counsel was ineffective for failing to call Aziz was forfeited because it could have been raised on direct appeal; (2) "forfeiture aside," that claim failed because Aziz's testimony would have been cumulative; and (3) there was no ineffective assistance of counsel for failure to introduce the water bills as their introduction would not have changed the outcome of the trial. *Emers*, 2020 WL 5535289, at *5-*7. The appellate court made no reference to any claim that counsel was ineffective for failing to file a post sentencing motion. *Id.*

Petitioner then filed a PLA to the Illinois Supreme Court. Therein, Petitioner asserted, inter alia, that the appellate court "did not rule on the trial lawyers lack of entering a motion for reconsider of sentencing[.]" The PLA was denied in January 2021. *People v. Emers*, 163 N.E.3d 727 (Ill. 2021).

**Successive Postconviction Proceedings**

In February 2021, Petitioner filed a motion for leave to file a successive postconviction petition, alleging 14 claims of error. Relevant here, he alleged ineffective assistance of counsel for failing to introduce water bills in his name, call Aziz as a witness, and file a motion to reconsider his sentence. Petitioner also alleged that he was subject to an illegal search and seizure. The trial court issued a written order denying leave to file a successive postconviction petition.

On appeal, the Office of the State Appellate Defender was appointed and moved to withdraw as counsel. The Illinois Appellate Court granted the motion and affirmed the trial court's judgment. *People v. Emers*, No. 4-21-0337 (Ill. App. Ct. Oct. 24, 2022).

14

Petitioner filed an ensuing PLA, which the Illinois Supreme Court denied in January 2023. *People v. Emers*, 201 N.E.2d 593 (Ill. 2023).

**State Habeas Corpus Petition**

Also in February 2021, Petitioner filed a pro se petition for state habeas corpus relief. Petitioner alleged, in relevant part, (1) counsel rendered ineffective assistance by failing to file a motion to suppress the results of "a cavity search" performed at the time of arrest, (2) counsel rendered ineffective assistance for failing to introduce copies of Petitioner's water bills into evidence, and (3) the trial court violated Petitioner's Fifth Amendment right to remain silent.

In May 2021, the trial court dismissed Petitioner's petition sua sponte because Petitioner "failed to name the warden of the prison in which he is housed or the director of the Department of Corrections, and as such he has named the incorrect respondent in his claim."

The Illinois Appellate Court affirmed the trial court's judgment, finding Petitioner failed to state a valid claim for habeas corpus relief. *Emers*, 2022 WL 2345823, at *2. Petitioner then filed a PLA to the Illinois Supreme Court, which was denied in September 2022. *People v. Emers*, 197 N.E.3d 1133 (Ill. 2022).

**Federal Habeas Corpus Petition**

Petitioner filed the instant habeas corpus petition on November 23, 2020. Therein, he raises the following claims: (1) the trial judge violated Petitioner's right to remain silent when she made remarks about Petitioner choosing to remain silent during his presentence investigation; (2) trial counsel was ineffective for (a) failing to call Aziz

15

as a witness, (b) failing to introduce water bills into evidence, and (c) failing to submit a motion to reconsider sentence; (3) appellate counsel was ineffective for failing to raise certain claims in his direct appeal, which caused those claims to be forfeited; and (4) Petitioner was subjected to an illegal search and seizure after he was arrested in the parking lot of his workplace.

## ANALYSIS

Habeas corpus relief is reserved for "extreme malfunctions in the state criminal justice systems," not as a means for "ordinary error correction." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979)).

For a habeas petitioner to obtain relief on a claim rejected on the merits in state court, the state court's decision must have been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

The standard set forth in 28 U.S.C. § 2254(d) is a high bar and contemplates only "the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citing *Howes v. Fields*, 565 U.S. 499, 505 (2012)). "An 'unreasonable' application of clearly established federal law must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019) (quoting *White*, 572 U.S. at 419 (cleaned up)). Likewise, "[a] state court's factual findings receive deference [even] if 'reasonable minds reviewing the record might disagree about the finding in question.'" *Id.* (quoting

16

*Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (cleaned up)). A petitioner has the burden of rebutting the factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[1]

### Fifth Amendment Claim

Petitioner contends that the trial court violated his Fifth Amendment right to remain silent when it made remarks about his refusal to cooperate during his presentence investigation. The Illinois Appellate Court rejected this claim on the merits. *Emers,* 2019 WL 3413592, at *7. Thus, the issue before this court is not whether the trial court's comments violated Petitioner's right to remain silent, but whether the Illinois Appellate Court's decision was "contrary to, or involved an unreasonable application" of established Supreme Court precedent or "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). That standard is not met here.

The Supreme Court has indeed held that the right to remain silent extends to sentencing proceedings. *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999). This extension, however, has been limited by the Court. In *Mitchell*, the district judge drew an adverse inference about the illegal drug quantity attributable to the defendant based on his silence during sentencing. *Id.* at 327-30. The *Mitchell* Court held this violated the defendant's right to remain silent, but confined its holding to the principle that a court may not use a defendant's silence to determine *facts* about the underlying offense. *Id.* at 317, 327-330. Importantly, the Court expressly declined to address whether a

_____

[1] Petitioner does not dispute any of the factual findings made by any state court.

defendant's silence bears upon a lack of remorse or acceptance of responsibility for sentencing purposes: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility . . . is a separate question. It is not before us, and we express no view on it." *Mitchell*, 526 U.S. at 330.

The Supreme Court reiterated this point in *White v. Woodall*, a subsequent Fifth Amendment habeas case. The Court explained that *Mitchell's* holding was framed "narrowly, in terms implying that it was limited to inferences pertaining to the facts of the crime." *White*, 572 U.S. at 421 (citing *Mitchell*, 526 U.S. at 328). The Court further explained that *Mitchell* left "open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence." *Id*. at 416. As Respondent correctly emphasizes, these cases confirm that the Supreme Court has never recognized a constitutional right against self-incrimination where a defendant's silence is used to assess rehabilitative potential at sentencing. See *id.*

In Petitioner's case, the trial court did not rely on his silence to determine facts about his crime. Rather, the court expressly considered Petitioner's refusal to cooperate in the preparation of the presentence report as bearing on his "rehabilitative potential." The prohibition on the use of silence described in *Mitchell* does not apply here. At most, Petitioner's case instead falls within the area the Supreme Court has declined to address. Because there is no clearly established federal law, Petitioner cannot show that the Illinois Appellate Court unreasonably applied such law. Accordingly, the court finds that Petitioner's Fifth Amendment claim is DENIED.

**Ineffective Assistance of Trial Counsel**

Petitioner next contends that his trial counsel was ineffective for (a) failing to call Aziz as a witness, (b) failing to introduce water bills into evidence, and (c) failing to submit a motion to reconsider sentence.

Claim (a) – Failure to Call Aziz as a Witness

Respondent argues that this claim has been procedurally defaulted because the Illinois Appellate Court resolved it on independent and adequate state law grounds.

In federal habeas cases, federal courts may not address the merits of a claim that the state court resolved on "a state law ground that is both independent of the federal question and adequate to support the judgment." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)). "Adequacy requires that the state-law ground be 'firmly established and regularly followed[.]'" *Lee-Kendrick v. Eckstein*, 38 F.4th 581, 587 (7th Cir. 2022) (quoting *Garcia v. Cromwell*, 28 F.4th 764, 775 (7th Cir. 2022)). Independence requires that "the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (quoting *Garcia*, 28 F.4th at 774).

The appellate court held that Petitioner's claim that counsel had been ineffective for failing to call Aziz as a witness was forfeited as it could have been raised on direct appeal. *Emers*, 2020 WL 5535289, at *7. The court explained that "in Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record." *Id.* at *5 (quoting *People v. Veach*, 89 N.E.3d 366, 375 (Ill. 2017)). The court found that the ineffectiveness claim regarding Aziz "was based entirely upon facts

19

contained in the common law record," noting that Aziz's affidavit—on which Petitioner relied in his amended postconviction petition—was the same affidavit submitted at his sentencing hearing. *Id.* Because the claim was apparent on the record, it should have been raised on direct appeal and, as a result, was forfeited. *Id*

The appellate court's determination that this claim was forfeited constitutes an independent and adequate state law ground for habeas purposes. *Whitehead v. Harrington*, 2017 WL 4699241, at \*10 (N.D. Ill. Oct. 19, 2017) (citing *Kaczmarek*, 627 F.3d at 592) ("Illinois' forfeiture rule is an independent and adequate state law ground in the context of federal habeas review.").

This court recognizes that the appellate court, after finding Petitioner's claim was forfeited, nevertheless proceeded to discuss the merits of that claim. On the merits, the appellate court found that calling Aziz as a witness would have produced only cumulative testimony and therefore would not have created a "reasonable probability sufficient to undermine confidence in the outcome." *Id.* at \*6. This discussion, however, does not remove the procedural bar in federal court. The Seventh Circuit has rejected the argument that "the presence of any discussion of the merits indicates that the state court did not base its ruling on independent state law grounds." *Smith v. McKee*, 598 F.3d 374, 386 (7th Cir. 2010) (noting "that is not the law"). "Only when the state court's analysis of state law and federal law grounds are interwoven, to such an extent that we cannot clearly determine whether the state court opinion relies on state law grounds, do we set aside the state law grounds and address the issue." *Id.* Here, the Illinois Appellate Court began its merits analysis with the proviso, "even if we were to

conclude that defendant's petition was not subject to these procedural bars"—making it clear that forfeiture provided an independent and adequate ground for its decision. See *Samanta v. Williams*, 2015 WL 5722581, at *6 (N.D. Ill. Sept. 29, 2015).

Petitioner has one last avenue to save this claim: demonstrating either cause and prejudice or a miscarriage of justice. *Smith*, 598 F.3d at 382 (citing *Coleman v. Thompson*, 501 U.S. 750 (1991)). A federal court can "excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Id.* (citing *Coleman*, 501 U.S. at 750).

Petitioner bears the burden of establishing cause for default and resulting prejudice or a miscarriage of justice. *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010) (citing *Dretke v. Haley*, 541 U.S. 386, 388 (2004)). Petitioner has not filed a reply in this matter and otherwise has made no attempt to demonstrate either cause or prejudice for his default; nor does he show that denying relief would result in a fundamental miscarriage of justice. Petitioner having failed to meet this burden, his procedural default of claim (a) cannot be excused. Accordingly, claim (a) must be DENIED.

<u>Claim (b) – Failure to Introduce Water Bills</u>

Respondent contends that claim (b) is also procedurally defaulted because it, too, was found forfeited by the Illinois Appellate Court and thus was decided on independent and adequate state law grounds. Respondent is mistaken. While the trial court had found both issues—ineffectiveness for failing to call Aziz and ineffectiveness for failing to introduce the water bills—were forfeited in that they could have been

21

raised on direct appeal, and the state argued that same on appeal, the appellate court did not address whether the water bill claim was forfeited. *Emers*, 2020 WL 5535289, at *7. Instead, it addressed the claim on its merits, concluding: "In light of all the evidence against [Petitioner], we cannot say a reasonable probability exists the result of the proceedings would have been different had counsel introduced [Petitioner's] water bills at trial." *Id.* Therefore, this court will address the claim on the merits.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Review of the first prong contemplates deference to strategic decision-making[.]" *Williams v. Washington*, 59 F.3d 673, 679 (7th Cir. 1995); *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

While the appellate court decided this issue at the prejudice prong, this court would note that Petitioner cannot "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (cleaned up). To be sure, the intuitive value of water bills in Petitioner's name at a different address is clear—they tend to show that Petitioner

22

did not live at 905 Prestwick Point. But Petitioner's sister testified at trial that Petitioner had put the water bills in his name at 1901 Joanne Lane. The bills in question with respect to the instant claim were for service at 1305 Christopher Circle. Trial counsel could reasonably have concluded that evidence that Petitioner was paying for water at two separate addresses would at best confuse the jury, and at worst diminish the impact of any water bill evidence altogether.

Furthermore, even if the water bills had been introduced, they would not have altered the outcome for Petitioner. As the trial court noted in granting the State's motion to dismiss Petitioner's amended postconviction petition, the State was not required to prove that Petitioner *resided* at Prestwick Point, but only that he had actual or constructive possession of evidence connected to that residence. See *People v. Givens*, 934 N.E.2d 470, 481 (Ill. 2010) ("Proof that a defendant had control over the premises where the drugs were located can help resolve this issue . . . but control of the premises is not a prerequisite to a conviction. Moreover, possession may be actual or constructive."). The State presented ample evidence linking Petitioner to the Prestwick Point address, including that he had a key to the residence on his person and that an earnings statement and prescription in his name were found inside. And defense counsel had already presented witnesses who testified that Petitioner lived elsewhere, such that the effect of the water bills would be largely cumulative.

Accordingly, Petitioner has failed to show that the Illinois Appellate Court's conclusion that Petitioner failed to demonstrate ineffective assistance of counsel was an unreasonable application of *Strickland*. Claim (b) must therefore be DENIED.

<u>Claim (c) – Failure to File a Motion to Reconsider Sentence</u>

Respondent asserts that this claim is procedurally defaulted in that it has not been submitted to a full round of state court review. Specifically, Respondent asserts that Petitioner did not raise this claim in his original postconviction petition.

That assertion was apparently based on nothing more that the appellate court opinion following Petitioner's postconviction appeal, in which the appellate court made no mention of any claim concerning counsel's failure to file a motion to reconsider sentence. But, curiously, in the ensuing PLA, Petitioner accused that court of failing to rule on the issue.

This court therefore ordered Respondent to supplement the record with briefs from Petitioner's postconviction appeal (materials Respondent was obligated to provide in the first place under Rule 5(d) of the Rules Governing Section 2254 Cases) as well as his postconviction petition. Respondent provided those materials, albeit nine days after the deadline to do so. Those materials confirm that Petitioner *did* raise this issue in his postconviction petition and that the issue *was* briefed before the appellate court. It remains unclear why that court did not address the issue.

"[W]here a state court overlooks a constitutional claim that was fairly presented to it, federal review is de novo." *Harris v. Thompson*, 698 F.3d 609, 624 (7th Cir. 2012).

Thus, this court will address this ineffective assistance of counsel claim on its merits under *Strickland*.[2]

Here, Petitioner states that counsel was ineffective for not filing a post-sentencing motion. But Petitioner never says what the basis of that motion would have been. The court has scoured his prior state court pleadings and can find no such basis. Petitioner failed to specify any basis in his opening appellate brief, his reply, this habeas petition, and any other filing.

Under *Strickland*, Petitioner must show a reasonable probability that "the motion would have been granted." *Perez v. United States*, 286 F. App'x 328, 331 (7th Cir. 2008) ("Failure to raise a losing argument or pursue a futile motion to suppress does not constitute ineffective assistance."). But without identifying the basis for such a motion, Petitioner cannot show any chance that it would have been granted. The court can discern no basis on which such a motion would have been granted. The record reflects that Petitioner's sentence was not excessive under state law,[3] and his counsel properly chose not to pursue a meritless motion. See, e.g., *Dailey v. Enloe*, 2016 WL 6892888, at *4 (N.D. Ill. Nov. 23, 2016) ("[T]here was no legitimate basis to pursue a motion to reconsider in the trial court. The record reflects that Dailey's sentence was not excessive

---

[2] Despite submitting materials that fundamentally undermine its argument that this claim is procedurally defaulted, Respondent has offered no alternative argument on the merits.

[3] Petitioner was sentenced within the Class X statutory range (730 Ill. Comp. Stat. 5/5-4.5-95(b) (West 2014)).

under state law and his counsel properly chose not to pursue a meritless motion.").

Accordingly, Petitioner's claim (c) must also be DENIED.

### Ineffective Assistance of Appellate Counsel

Petitioner next asserts that appellate counsel was ineffective for failing to raise certain claims on direct appeal.

A federal court may not entertain a § 2254 petition unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008); 28 U.S.C. § 2254(b)(1)(A). In other words, a state prisoner seeking a federal writ of habeas corpus must first provide state courts the opportunity to pass upon and correct alleged violations of their prisoner's federal rights. *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013). Thus, a habeas petitioner must subject his federal claims to one complete round of state court review; the failure to do so results in procedural default of the claims. *Malone*, 538 F.3d at 753.

Petitioner raised this claim in his motion for leave to file a successive postconviction petition, which was rejected by both the trial court and appellate court. In his PLA to the Illinois Supreme Court, he argued only generally that the appellate courts caused a "miscarriage of justice," and thus did not fairly present the claim. See *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004) ("A petitioner fairly presents his federal claim to the state courts when he articulates both the operative facts and the controlling legal principles on which his claim is based."). Because Petitioner failed to present the claim through a complete round of state court review, it is procedurally defaulted.

26

Petitioner also cannot excuse the default. Again, he has not filed a reply to his federal habeas petition and makes no attempt to show cause and prejudice, or a miscarriage of justice to overcome the procedural bar. Accordingly, Petitioner's ineffective assistance of appellate counsel claim is DENIED.

**Illegal Search and Seizure**

Finally, Petitioner asserts that he was subjected to an illegal search and seizure. Petitioner included this claim in his state habeas corpus petition. The appellate court, however, did not reach the merits of the claim because it was not cognizable under Illinois habeas law. *Emers*, 2022 WL 2345823, at *2.

It is well established under Illinois law "that an order of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court that lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction that entitles him to release." *Beacham v. Walker*, 896 N.E.2d 327, 332 (Ill. 2008). The appellate court found that Petitioner's claims in his state petition concerned events preceding his conviction and did not implicate the trial court's jurisdiction. Because Illinois habeas relief is available only for jurisdictional defects or postconviction events, the appellate court denied his state petition. *Emers*, 2022 WL 2345823, at *2.

That ruling constitutes an independent and adequate state law ground barring federal review. The appellate court relied solely on the jurisdictional and pre-conviction limitations of Illinois habeas law—state rules that are both independent of federal law and consistently applied by Illinois courts. See *U.S. ex rel. Vaughn v. Pierson*, 2000 WL

960741, at *5 (N.D. Ill. July 10, 2000) (holding that where the state court dismissed a habeas petition based on the jurisdictional limits of Illinois law, the dismissal constitutes an independent and adequate state ground for procedural default).

Like his ineffective assistance of appellate counsel claim, Petitioner raised this issue in his motion for leave to file a successive postconviction petition, but not in his PLA to the Illinois Supreme Court. As a result, this claim is procedurally defaulted, and Petitioner has not carried his burden to excuse the default. Accordingly, the instant claim must be DENIED on that ground. The Petition (#1) is therefore DENIED in full.

**Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, the court DENIES a certificate of appealability in this case.

A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). A certificate of appealability should be issued only where a petitioner has demonstrated that the issues are debatable among jurists of reason, the court could resolve the issues in a different manner, or the questions are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The court concludes that jurists of reason would not find it debatable that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Petitioner has not demonstrated that the issues raised in his Petition that this court has addressed on their merits—namely, his Fifth Amendment claim, his claim that counsel was ineffective for failing to introduce water bills at trial, and his claim that

counsel was ineffective for failing to file a motion to reconsider sentence—are debatable among jurists of reason. The court could not resolve those issues in any other way, nor does it believe those questions are adequate to deserve encouragement to proceed further.

Moreover, where the district court denies a habeas petition on procedural grounds, a certificate of appealability should issue only when the petitioner shows, inter alia, "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id*. The court has found that his remaining claims are procedurally defaulted. There is no other way to resolve those claims, and no reasonable jurist could find otherwise. It follows that no reasonable jurist could conclude that the court has erred in denying the Petition. A certificate of appealability is therefore DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner Lyarron Emer's Petition for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

(2) A certificate of Appealability is DENIED.

(3) This case is terminated.

ENTERED this 4th day of December , 2025.

s/Colin Stirling Bruce

COLIN S. BRUCE

U.S. DISTRICT JUDGE

29